# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

PAUL J. KIGER                          CIVIL ACTION NO. 07-cv-2086

VERSUS                                JUDGE HICKS

OFFICER CLAIRBORNE, ET AL        MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Paul Kiger ("Plaintiff") is a convicted state prisoner who was housed at the Bossier Medium Security Facility from August 10, 2007 until January 7, 2008. Plaintiff alleges in his original and amended complaints that Deputy Dominic Claiborne (sometimes spelled Clairborne) issued him an XL size jumper when Plaintiff requested an XXL jumper. Plaintiff alleges that the seam of the jumper was pressed in his buttocks, and his genitals were showing through. Plaintiff alleges that he complained, following which he was wrongfully hit and maced. Plaintiff also complains that he was kept in isolation for several days after the incident.

**Deputy Claiborne: No Service**

Plaintiff has named several defendants, but Deputy Claiborne is obviously the principal target of the allegations. The court, pursuant to its obligation to have court officers serve process for paupers, directed the Marshal to serve Claiborne at the address provided by Plaintiff. The Marshal attempted to make service at the correctional facility address

provided by Plaintiff, but he noted on the return, "Subject no longer works for Bossier Parish." After several months of proceedings related to finding an address for Claiborne, the other defendants filed under seal Claiborne's last address known to them. The Marshal was directed to attempt service on Claiborne at that address, but he returned the summons unexecuted with the remark "Apartment was vacant." The court, after reciting the detailed history of this service issue, permitted Plaintiff more than 30 additional days, ending on January 12, 2008, to file a current address for Claiborne where service may be made. Plaintiff was warned that failure to do so might result in dismissal of the claims against Claiborne. Doc. 88.

Plaintiff has not filed another address for Claiborne. Rather, he has filed a series of meritless motions attempting to substitute other persons in Claiborne's place. The court has denied the motions and explained to Plaintiff that the procedure he seeks to employ applies only when the party has been sued in his official capacity and ceases to hold office. Plaintiff's claim against Claiborne is plainly an individual capacity claim. The difference between the two types of claims is explained in Kentucky v. Graham, 105 S.Ct. 3099 (1985). See Doc. 109.

The court has given Plaintiff more than a reasonable opportunity, even granting him leave to conduct discovery on the issue, and Plaintiff has not been able to produce a valid address for Claiborne. The court is obligated to direct the Marshal to make service at an address that has been provided, but the court is not a detective agency, and it has no way of

obtaining service on Claiborne absent a valid address. Under these circumstances, the court is justified in dismissing all claims against Claiborne for failure to prosecute. Furthermore, for the reasons set forth below, the summary judgment evidence submitted by the other defendants contests the allegations against Claiborne, and Plaintiff has not created a genuine issue of material fact in that regard.

**Summary Judgment Record**

The other defendants have joined in a Motion for Summary Judgment (Doc. 64) that is supported by affidavits and copies of prison records. Those records show that Plaintiff is 5' 8" tall and weighed about 160 to 165 pounds at the relevant time. Captain Charles Gray testifies that inmates are not allowed a one-piece jumpsuit that is too large because it would allow for the concealment of weapons and contraband. Gray adds that, when the new uniform was adopted, he had the deputies try on the jumpsuits so that they were aware of the sizes when they issued the uniforms. He testifies that an XL jumpsuit is "plenty big" for a man of Plaintiff's size.

Deputy Thomas Wilson testifies that he is aware that Plaintiff complained about the size of the uniform issued to him. Wilson says that he instructed Plaintiff to put on the uniform and meet him in the hallway. Plaintiff did not comply with the order, so Deputies Wilson and Claiborne took Plaintiff to isolation. Wilson testifies that he did not see Plaintiff being hit with the cell door or struck by any deputy (as alleged by Plaintiff). Wilson testifies that Plaintiff was cursing and, with the cell door open, Plaintiff rushed from the back of the

cell with his fist clenched in an aggressive manner. Deputy Claiborne then sprayed Plaintiff in the face with freeze spray, and Plaintiff was placed back in the cell. Plaintiff refused medical care, but Deputies Martin and Coker cuffed Plaintiff to take him to the medical office. Wilson says that he had no contact with Plaintiff after this incident.

Deputy Brandon Coker testifies that he placed Plaintiff in handcuffs after Claiborne sprayed Plaintiff. Coker escorted Plaintiff to the medical department and released one hand from the handcuffs. Coker testifies that Plaintiff turned aggressively toward him, and Deputy Martin had to immediately restrain Plaintiff and place the handcuffs on him again. Plaintiff refused medical care, and he was returned to isolation.

Plaintiff has complained about his conditions while in isolation, including the lack of bedding. Deputy Jonathan Colgin testifies that when an inmate is in isolation, mats are provided only during the time from 10:00 p.m. to 6:30 a.m. Otherwise, the mats are kept stacked in the hallway outside the isolation cells. At night, the door to an inmate's cell is opened, and the inmate is instructed to obtain his mat and bedding. If the inmate refuses, he is not forced to obtain a mat. Only suicidal inmates are prohibited from having bedding, and Colgin testifies that Kiger was not (to his knowledge) suicidal. Other deputies, including Linton Jacobs, Heath Lyles, and Jessie Williams, Jr. testified that they had no personal involvement in the incidents alleged in the complaint.

**Analysis of Summary Judgment**

Plaintiff was given an extension of time to respond to the Motion for Summary Judgment. He has filed a memorandum (Doc. 111), but it is not supported by any competent summary judgment evidence. Plaintiff repeats his allegations that Deputy Claiborne mistreated him, and he alleges that Deputies Martin, Coker, Claiborne, and an unknown deputy took him to a holding cell and beat him.

Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

The moving parties have satisfied their burden of presenting summary judgment evidence that flatly contradicts Plaintiff's allegations, shifting the burden to Plaintiff to demonstrate the existence of a genuine issue of material fact. In determining whether a fact is material, it must be kept in mind that Plaintiff can prevail on his Eighth Amendment excessive force claim only if he shows that force was applied maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 112 S.Ct. 995 (1992).

Plaintiff has presented only his memorandum, but unsworn memoranda are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991). Plaintiff has, since the Motion for Summary Judgment was filed, filed a number of motions, such as a request to have the Marshal enter the facility to take photographs and seize or copy computer equipment, which Plaintiff apparently believes will help him oppose the motion. The court has denied the motions as frivolous. See, e.g., Doc. 98 (denying several motions). Plaintiff has filed more than 25 submissions since the Motion for Summary Judgment was filed in October 2008, but he has yet to file competent summary judgment evidence that would create a genuine issue of material fact.

**Exhaustion of Administrative Remedies**

The Motion for Summary Judgment should be granted for the reasons above, but the motion asserts one additional argument that bears mention. Defendants argue that Plaintiff failed to exhaust his administrative remedies before he filed suit, as required by 42 U.S.C.

§ 1997e(a). That argument is an affirmative defense. Jones v. Bock, 127 S.Ct. 910 (2007); Carbe v. Lappin, 492 F.3d 325 (5th Cir. 2007). Movants cite in support of the argument the affidavit of Captain Gray, but Gray testifies only that he is not "aware of any grievance filed by the inmate." Movants also cite the affidavit of Deputy Coker, who testifies that he is "unaware of any grievances filed by [Plaintiff]." Coker adds, "All grievances must be logged and numbered when received, and none were." That is the extent of the evidence on this defense, on which movants bear the burden.

Local judges have granted or recommended the granting of many motions for summary judgment for prison and jail officials on the grounds that the inmate did not exhaust administrative remedies before filing suit. The successful motions, most often filed by officials at David Wade Correctional Center and the Caddo Correctional Center, are supported by an affidavit from an official who testifies that he or she is responsible for the administration of the administrative grievance system at the facility. The affidavit will usually explain the grievance procedure and/or be accompanied by a certified copy of the grievance procedure in place at the institution at the relevant time, state affirmatively that the affiant has made a review of the grievance records under his administration, and declare the results of that review. The affiant usually attaches a copy of any grievances that were filed and the administration's written responses thereto. See, e.g., Gillet v. Anderson, 577 F.Supp.2d 828 (W.D. La. 2008)(David Wade Correctional Center); Humphreys v. Pylant,

2008 WL 2812962 (W.D. La. 2008)(Franklin Parish Detention Center); and Adger v. Wynn, 2008 WL 4186865 (W.D. La. 2008)(Caddo Correctional Center).

That degree of detail is lacking in this case, and this is only the second time the court is aware of the Bossier Parish Sheriff asserting that a grievance procedure is in place in the Bossier Parish jails. Many Bossier Parish prisoners who have filed suits have alleged that there is no administrative grievance procedure in place or that grievances are ignored. Given that background, and the lack of factual detail regarding the alleged grievance process and the search for any grievances filed by Plaintiff, summary judgment is not appropriate with regard to this defense. The same recommendation was made the first time the Bossier Parish Sheriff raised the defense, in Harrison v. Deen, 2008 WL 5435339 (W.D. La. 2008).

Since the decision in Jones v. Bock, the court may no longer raise and explore failure to exhaust administrative remedies *sua sponte*, and it is dependent on counsel to urge and support the defense. Failure to exhaust is often a solid defense for prison and jail officials who work in a facility with a grievance plan in place. When raised early and supported by evidence, the defense often ends the litigation quickly without any significant expense by the taxpayers who fund the prison or jail's legal defense, or the unnecessary expenditure of judicial resources addressing the merits of the case. Defendants are encouraged to present the defense early when it is applicable, but a defendant who wishes to prevail on the defense must support it with specific facts backed by competent summary judgment evidence that establishes a basis for the defense.

Accordingly;

**IT IS RECOMMENDED** that the Motion for Summary Judgment (Doc. 64) be **granted** and that all of Plaintiff's claims against all Defendants be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of February, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE